UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRYSTAL MARI CLINTON,

                                                                                        **DECISION**
                                                        Plaintiff,                      **and**
                                  v.                                                    **ORDER**

ANDREW M. SAUL,[1] Commissioner of                                **19-CV-6114F**
  Social Security,                                                          (**consent**)

                                                        Defendant.
_____

APPEARANCES:           LAW OFFICES OF KENNETH R. HILLER, PLLC
                                    Attorneys for Plaintiff
                                    KENNETH R. HILLER, and
                                    JUSTIN M. GOLDSTEIN, of Counsel
                                    6000 North Bailey Avenue, Suite 1A
                                    Amherst, New York  14226

                                    JAMES P. KENNEDY, JR.
                                    UNITED STATES ATTORNEY
                                    Attorney for Defendant
                                    Federal Centre
                                    138 Delaware Avenue
                                    Buffalo, New York  14202
                                                        and
                                    KATHRYN L. SMITH
                                    United States Attorney's Office
                                    Assistant United States Attorney, of Counsel
                                    100 State Street
                                    Rochester, New York  14617
                                                        and
                                    KRISTIN M. ROGERS, and
                                    JILLIAN ERIN NELSON
                                    Special Assistant United States Attorney, of Counsel
                                    Social Security Administration
                                    Office of General Counsel
                                    26 Federal Plaza, Room 3904
                                    New York, New York  10278

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 7, 2020, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 14).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 9, 2019 (Dkt. 10), and by Defendant on November 8, 2019 (Dkt. 12).

## BACKGROUND

Plaintiff Crystal Mari Brown ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed on July 7, 2015 with the Social Security Administration ("SSA"), for Social Security Disability Insurance ("SSDI") under Title II of the Act, and for Social Security Supplemental Income ("SSI") under Title XVI of the Act (together, "disability benefits").  Plaintiff alleges she became disabled on March 6, 2015, based on major depressive disorder, social anxiety disorder, erosive gastritis, nausea and vomiting, diabetes, high blood pressure, high cholesterol, anemic.  AR[2] at 132, 139, 160, 165. Plaintiff's applications initially were denied on September 15, 2015, AR at 56-73, and at Plaintiff's timely request, AR at 82-83, on December 18, 2015, a hearing was held in Rochester, New York ("Rochester"), before administrative law judge John P. Costello ("the ALJ").  AR at 32-55 ("administrative hearing").  Appearing and testifying at the

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on May 13, 2019 (Dkt. 7).

administrative hearing were Plaintiff, represented by Tara M. Tomory, Esq., and vocational expert Sakinah Malik ("the VE").

On February 23, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 10-31 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 129-31, 225-26.  On December 17, 2018, the Appeals Counsel denied Plaintiff's request for review, AR at 1-7, rendering the ALJ's Decision the Commissioner's final.  On February 11, 2019, Plaintiff commenced the instant action in this court seeking judicial review of the ALJ's Decision.

On September 9, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Administrative Record (Dkt. 10-1) ("Plaintiff's Memorandum").  On November 8, 2019, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 (Dkt. 12-1) ("Defendant's Memorandum").  Filed on November 14, 2019 was Plaintiff's Reply Argument (Dkt. 13) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Crystal Mari Clinton ("Plaintiff" or "Clinton"), born July 30, 1969, was 45 years old as of March 6, 2015, her alleged disability onset date ("DOD"), and 48 years old as of February 23, 2018, the date of the ALJ's Decision.  AR at 26, 132, 139, 160. As of the administrative hearing, Plaintiff had never married, had no children, and lived in an apartment with a roommate.  AR at 39, 173, 297, 425, 611.  Plaintiff completed high school where she attended regular classes and is also trained as a certified nursing assistant ("CNA").  AR at 166, 302.  Plaintiff had a driver's license, but no working vehicle.  AR at 47.  Plaintiff's work history includes several CNA jobs, AR at 39-40, 166, 209, 214, but Plaintiff's was discharged from her most recent CNA jobs after calling in sick too many times.  *Id.* at 41-42.

It is undisputed that Plaintiff suffers from mental health problems including depression and anxiety.  Plaintiff attributes her depression to her mother's death in 2005, AR at 594, 601, maintaining she becomes very nervous when she has to leave the house causing her to be nauseous.  AR at 601.  Plaintiff maintains her mental health issues interfere with her ability to function on a daily basis such that Plaintiff rarely prepares meals, relying on her roommate to do so, AR at 297, cleans two or three times a week and does laundry once a week, *id.*, Plaintiff's roommate does the grocery shopping, *id.*, Plaintiff showers and dresses herself two or three times a week, *id.* at

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.  Further, because at the administrative hearing Plaintiff stated she has no physical problems that would prevent her from working, AR at 43-44, and does not argue in her motion papers for disability based on physical impairments, the court focuses only on Plaintiff's mental health impairments

297-98, spends time watching television and interacting with her brother and a few friends, and uses marijuana on a daily basis.  *Id.* at 298, 302-04.

On February 5, 2015, Plaintiff commenced mental health treatment at Strong Behavioral Health General Psychiatry Clinic ("SBH") where Plaintiff was treated by psychologist Deborah King, Ph.D. ("Dr. King"), and psychological therapist Curllin M. Alexis ("Alexis").  AR at 234-37, 795-840.  Following Plaintiff's therapy session on December 16, 2015, Plaintiff was discharged for poor attendance, with many of her later sessions focusing on the completion of paperwork related to Plaintiff's disability benefits application.  AR at 795-840.  On February 25, 2016, Plaintiff commenced mental health treatment at Catholic Family Center ("CFC"), with Priscilla Cortes, LMHC-P ("Counselor Cortes"), and Sara Liedtke, LMHC ("Counselor Liedtke"), AR at 593-762, 774-77, and was referred to Genesee Mental Health for enrollment in the Personalized Recovery Oriented Services ("PROS") program, the focus of which is returning participants to the workforce.  AR at 496-589.  On August 30, 2016, Plaintiff was enrolled at PROS for group counseling treatment of post traumatic stress disorder ("PTSD") and was treated until December 16, 2016, when Plaintiff restarted counseling at CFC.  AR at 555, 593-759.  On February 24, 2017, Plaintiff underwent a surgical hysterectomy that caused her to miss several counseling appointments.  AR at 893.  Plaintiff's primary care provider during all times relevant to Plaintiff's disability benefits application was Thomas Gregg, M.D. ("Dr. Gregg").  AR at 360-424.  On July 5, 2017, Plaintiff began receiving medication management at CFC from Odysseus Adamides, M.D. ("Dr. Adamides"), including Lispinopril-Hydrochlorothiazide (high blood pressure), Sertraline (depression, anxiety), and Rexulti (antidepressant).  AR at 742, 747-48, 752, 757-58.

## DISCUSSION

### 1.      Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has

instructed . . . that the factual findings of the Secretary,[4] if supported by substantial

evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2.      Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI

benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable

regulations set forth a five-step analysis the Commissioner must follow in determining

eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v.*

*Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.

1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and

the claimant is eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The

first step is to determine whether the applicant is engaged in substantial gainful activity

during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and

416.920(b).  The second step is whether the applicant has a severe impairment which

significantly limits the physical or mental ability to do basic work activities, as defined in

the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an

impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration

requirement of at least 12 continuous months, there is a presumption of inability to

perform substantial gainful activity, and the claimant is deemed disabled, regardless of

age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20

C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.

its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff met the insured status requirement for SSDI through December 31, 2019, AR at 15, has not engaged in substantial gainful activity since March 6, 2015, her alleged disability onset date, *id.* at 15, and suffers from the severe impairments of depression, anxiety, PTSD, and marijuana dependence, *id.* at 16, that Plaintiff's hypertension and gastritis are not severe impairments, *id.*, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 16-17.  The ALJ further found that despite her impairments,

Plaintiff retains the RFC to perform a full range of work at all exertional levels with only non-exertional limitations including that Plaintiff is limited to performing simple work and routine tasks, with only occasional interaction with coworkers and the public, and must work in a low stress environment defined as work involving only occasional decision making.  *Id.* at 18-24.  Plaintiff is unable to perform her PRW as a CNA, yet given Plaintiff's RFC, age, high school education and ability to communicate in English, Plaintiff can perform jobs that exist in significant numbers in the national economy including as a cleaner and as a laundry worker.  *Id.* at 24-25.  Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act.  *Id.* at 25-26.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that at the fourth step, the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to follow the "treating physician rule," Plaintiff's Memorandum at 14-26, and failed to properly evaluate Plaintiff's credibility with regard to her subjective complaints.  *Id.* at 26-30.  Defendant argues the ALJ properly considered the various medical opinions in the record, Defendant's Memorandum at 5-15, and applied the appropriate legal standard in evaluating Plaintiff's subjective complaints.  *Id.* at 15-17.  In reply, Plaintiff reasserts her arguments challenging the ALJ's evaluation of the various medical opinions.  Plaintiff's Reply at 1-8.[5]  There is no merit to Plaintiff's arguments.

Under the so-called "treating physician rule," for disability benefits claims filed prior to March 27, 2017, an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of

---

[5] The court notes that Plaintiff's Reply does not contain any argument in further support of her challenge to the ALJ's assessment of Plaintiff's credibility.

[the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...."  20 C.F.R. § 404.1527(c)(2).  *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted).  Where, however, an ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  The failure to provide good reasons for rejecting a treating physician's opinion is grounds for remand.  *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician opinion and we will continue remanding when we encounter opinions from ALJ's [*sic*] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").  Further, the opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2). Treating physician opinions, however, are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence. 20 C.F.R. § 404.1527(d); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v.*

*Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  In the instant case, the ALJ did not violate the treating physician's rule.

Preliminarily, the court addresses Plaintiff's argument, Plaintiff's Memorandum at 14-16, that the Second Circuit specifically requires the ALJ "explicitly" apply the so-called "*Burgess* factors" when failing to assign a treating physician's medical opinion controlling weight.  Set forth in *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008), the *Burgess* factors include "'(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (brackets omitted) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2)))).  Nevertheless, "[a]n ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating medical opinion "is a procedural error," *id.* at 96, and does not require remand so long as the reviewing court is able to conclude, based on a search of the record, "'that the substance of the treating physician rule was not transversed'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).  *See also Atwater v. Astrue*, 512 Fed.Appx. 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulations are clear." (citing *Halloran*, 362 F.3d at 31-32 (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule,' but where 'the substance of the treating physician rule was not transversed."))).  In the instant case, substantial evidence in the record supports the weight the ALJ gave to the opinions from Plaintiff's treating sources.

In particular, the relevant opinions include those of treating psychologist Dr. King dated June 16, 2015, AR at 763-66, and November 4, 2015, AR at 767-70.[6]  In her June 16, 2015 opinion, Dr. King found Plaintiff with no limitations to maintaining attention and concentration, moderately limited in following, understanding and remembering simple instructions, independently performing simple and complex tasks, maintaining basic standards of hygiene and grooming, performing low stress and simple tasks, but very limited in her ability to regularly attend to a routine and to maintain a schedule.  AR at 765.  Dr. King's November 15, 2015 opinion was the same except that Plaintiff was moderately limited in maintaining attention and concentration.  AR at 769.  The ALJ, however, found such opinion inconsistent with Plaintiff's own testimony at the administrative hearing that Plaintiff is able to cook, clean, independently grocery shop, manage her own healthcare, maintain relationships with friends and family, and use public transportation.  AR at 21.  A plain reading of the transcript of the administrative hearing establishes Plaintiff did so testify.  AR at 47-49 (Plaintiff testifying she lives with a roommate and is able to do her "fair share of the housework," showers or bathes every other day, walks for exercise, takes the bus, walks or catches rides for appointments, and had recently traveled to Florida for a few weeks to visit with family).  The ALJ also considered that at numerous of her medical appointments, Plaintiff denied any active mental health symptoms.  AR at 20 (citing, *inter alia*, AR at 322 and 364 (Dr. Gregg reporting, respectively on April 16, 2015 and June 6, 2017, that upon general examination Plaintiff, psychologically, showed "appropriate mood and affect, no agitation"); AR at 452 (October 13, 2015 emergency department visit at Rochester

---

[6] The court notes the November 4, 2015 opinion was prepared by one Jennifer Leikman, a psychiatric counselor, and co-signed by Dr. King.

General Hospital for complains of abdominal pain assessing Plaintiff's psychiatric status

as "normal mood and affect.  Her behavior is normal."); and 849 (December 16, 2016

examination as Rochester Regional Health clinic noting Plaintiff's "speech is normal and

behavior is normal.  Judgment and thought content normal.  Anxious: slightly worried

about exam, otherwise calm demeanor.  Cognition and memory are normal.").  The ALJ

found that although these statements were made in the context of physical

examinations, "the lack of mental health endorsements and clinical signs of functional

loss present inconsistent evidence concerning the frequency, intensity, and limiting

effects of the claimant's mental impairments . . . ."  AR at 21.  The ALJ noted that

overall, Plaintiff's counseling treatment notes are remarkable only for a depressed or

anxious mood with Plaintiff often expressing to her treatment providers at CFC that "her

priority is to work on getting SSI."   AR at 21 (citing AR at 636).  Also considered by the

ALJ was Plaintiff's "ambivalence" and "lack of commitment" to treatment.  AR at 21

(citing AR at 826 (September 30, 2015 counseling session content at SBH indicating

Plaintiff "described ambivalence about continuing in therapy"); and 625 (September 30,

2016 Rochester Regional Health progress note stating Plaintiff "was ambivalent about

her enrollment in PROS.")).  The ALJ further considered evidence in the record that

Plaintiff's "desire not to work full-time may have been in part a lifestyle choice." AR at 21

(citing AR at 711 (Plaintiff stating on February 9, 2017 that "she is worried that she will

not get SSI and feels that she may need to start seeking employment opportunities. . . .

She shared that she was a CNA and also did housekeeping.  She stated that she is

open to doing housekeeping again.")).  The ALJ's reasons for not affording Dr. King's

opinions regarding limitations on Plaintiff's capacity for productive work controlling weight are thus supported by substantial evidence in the record.

Plaintiff also maintains the ALJ failed to grant appropriate weight to the opinions of Counselor Liedtke dated March 13, 2017, AR at 784-88, and September 27, 2017, AR at 760-62, and Counselor Cortes dated July 15, 2016, AR at 774-77.   Plaintiff's Memorandum at 20-23.  These treating sources, however, do not qualify as medical sources and, as such, the treating physician rule does not apply to their opinions.  See 20 C.F.R. § 404.1527(f).  Moreover, the opinions of Counselors Liedtke and Cortes assessed Plaintiff similarly to Dr. King's opinions, with Liedtke opining on March 13, 2017 that Plaintiff was moderately limited in demonstrating the capacity to perform simple and complex tasks independently, AR at 786, and opining on September 27, 2017 that with regard to unskilled work Plaintiff was seriously limited but not precluded from completing a normal workday and workweek without interruptions from psychologically based symptoms and dealing with normal work stress, AR at 761, and Cortes opining on July 15, 2016 that Plaintiff was "very limited" in demonstrating the capacity to regularly attend to a routine and maintain a schedule.  AR at 776.  The same substantial evidence that is inconsistent with Dr. King's opinions, *see* Discussion, *supra*, at 12-13, however, is equally inconsistent with the opinions of Counselors Liedtke and Cortes such that even if the Counselors' opinions were subject to the treating physician rule, which they are not, the evidence supports the ALJ's failure to afford the opinions controlling weight.

Further, the ALJ's reliance on the consultative examining opinion of Christine Ransom, Ph.D. ("Dr. Ransom"), prepared in connection with her psychiatric examination

on September 1, 2015, AR at 22-23, was permissible. *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) ("'[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence.'" (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983))).  Significantly, after examining Plaintiff, Dr. Ransom diagnosed Plaintiff with major depressive disorder, currently mild, panic disorder with agoraphobia, currently mild, and marijuana dependence, current.  AR at 304.  Despite such diagnoses, Dr. Ransom opined Plaintiff would have only "mild difficulty" with following and understanding simple directions and instructions, performing simple task independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule and learning simple new tasks, performing complex tasks, relating adequately with others, appropriately dealing with stress due to currently mild depressive disorder, and currently mild panic disorder with agoraphobia.  AR at 304.  The ALJ specifically found Dr. Ransom's "opinion is consistent with the medical record which . . . shows the claimant mostly displayed a depressed or anxious mood and lacked other signs of greater functional loss."  *Id.*  As discussed in connection with the ALJ's consideration of the opinions of Dr. King and Counselors Liedtke and Cortes, Discussion, *supra*, at 12-14, substantial evidence in the record is consistent with Dr. Ransom's opinion.

Accordingly, the ALJ did not violate the treating physician rule by relying on the consultative opinion of Dr. Ransom over the opinions of Dr. King and Counselors Liedtke and Cortes.

Nor did the ALJ err in discounting Plaintiff's credibility with regard to Plaintiff's subjective complaints of disabling limitations from her mental impairments as Plaintiff

argues.  Plaintiff's Memorandum at 26-30.[7]  It is the function of the ALJ, not the court, to assess the credibility of witnesses.  *See Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013).  Pain or other symptoms may be important factors contributing to a disability claimant's functional loss and affects a claimant's ability to perform basic work activities where relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms."  *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)).  Nevertheless, that ALJ "is not require[d] to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).  In this case, the ALJ's credibility finding is supported by substantial evidence in the record.

In particular, the ALJ found Plaintiff's allegations regarding the nature, intensity, persistence and limiting effects of Plaintiff's subjective complaints were inconsistent with the medical signs, laboratory findings, and other evidence in the record.  AR at 21.  Specifically, at the administrative hearing, Plaintiff described engaging in activities of daily living that are inconsistent with the alleged debilitating nature of her impairments,

---

[7] Plaintiff's Reply contains no further argument in support of judgment on the pleadings on this issue.

including living with others, functioning independently, handling her personal needs and such activities of daily living as cooking, cleaning, shopping, and traveling to Florida to stay with family for "a few weeks." AR at 21 (referencing AR at 47-49). The ALJ also remarked that the treatment Plaintiff received for her allegedly disabling impairments was "relatively conservative overall." AR at 21. Indeed, the record establishes Plaintiff's attendance at counseling sessions was so poor she was dismissed from the PROS program, AR at 795-840, at other counseling sessions Plaintiff's focus was on completing disability paperwork, AR at 813, 814, 822, 831, 834, 836, and Plaintiff actually expressed concern she would not be approved for disability benefits and would have to obtain employment, AR at 711, stating she would consider working "independently" in housekeeping or as a truck driver. AR at 838. The ALJ further relied on the fact that despite alleging severe mental health impairments, Plaintiff did not "endorse having the same specific work related functional loss to her medical providers as she did at the hearing and in her disability filings." AR at 21. As discussed above in connection with the treating physician rule, Discussion, *supra*, at 12-13, "the lack of mental health endorsements and clinical signs of functional loss present inconsistent evidence concerning the frequency, intensity, and limiting effects of the claimant's mental impairments . . . ," AR at 21, also supports the ALJ's credibility findings against Plaintiff.

The ALJ's credibility assessment of Plaintiff is therefore based on substantial evidence sufficiently accounted for in the ALJ's residual functional capacity assessment. Plaintiff's motion for remand on the issue of Plaintiff's credibility is thus without merit and is DENIED. *See Sloan v. Colvin,* 24 F.Supp.3d 315, 328-29 (W.D.N.Y. 2014) (no

remand where ALJ evaluated Plaintiff's credibility based on Plaintiff's testimony, activities of daily living and conflicting medical evidence).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 12) is GRANTED.  The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       September 8th, 2020
             Buffalo, New York

18